In the Matter of the Claim of MARY E. MARTIN, Claimant, against EDWARD PLAUT et al., Appellants.
STATE INDUSTRIAL BOARD, Respondent.

Argued November 22, 1944; decided December 30, 1944.

*James I. McGuire* and *George A. Garvey* for appellants. Claimant failed to establish any accident arising out of or in the course of her employment. (*Matter of Davidson* v. *Pansy Waist Co.,* 240 N. Y. 584; *Matter of Lynch* v. *City of New York,* 242 N. Y. 115; *Matter of Giliotti* v. *Hoffman Catering Co.,* 246 N. Y. 279; *Matter of Pisko* v. *Mintz,* 262 N. Y. 176; *Matter of Hall* v. *City of New York.* 282 N. Y. 708; *Matter of Priestley* v. *Hentz & Co.,* 258 N. Y. 618.)

*Nathaniel L. Goldstein, Attorney-General* (*Roy Wiedersum* of counsel), for respondent. The accidental injuries arose out of and in the course of the employment. (*Matter of Hoffman*

v. *New York Central R. R. Co.*, 290 N. Y. 277; *Matter of Unger* v. *New York Sportwear Co.*, 268 N. Y. 651; *Matter of Kefford* v. *Federal Reserve Bank,* 246 App. Div. 660, 270 N. Y. 675; *Matter of Giliotti* v. *Hoffman Catering Co.*, 246 N. Y. 279; *Matter of Culver* v. *Sevilla Home for Children,* 262 App. Div. 620, 266 App. Div. 705, 290 N. Y. 930; *Matter of Dienske* v. *Tompkins,* 280 N. Y. 524; *Matter of Birch* v. *Budd,* 256 App. Div. 53, 280 N. Y. 850; *Matter of Underhill* v. *Keener,* 258 N. Y. 543; *Matter of Finnegan* v. *Biehn,* 276 N. Y. 50; *Matter of Lief* v. *A. Walzer & Son,* 272 N. Y. 542; *Matter of Wood* v. *Kings Park State Hospital,* 266 App. Div. 804; *Matter of Di Salvio* v. *The Menihan Co.*, 225 N. Y. 123; *Matter of McInerney* v. *B. & S. R. R. Corp.*, 225 N. Y. 130; *Matter of Domres* v. *Syracuse Safe Co.*, 240 N. Y. 611; *Lauterbach* v. *Jarett,* 189 App. Div. 303.)

THACHER, J. Claimant, employed as a cook, was injured when she fell as she turned suddenly to pick up some of her clothes while dressing one morning in a bedroom furnished in her employer's home for her use. What caused her to fall she could not say unless it was the quickness of her movement. She had just left her bed and was dressing to go out and do her work. She was not conscious of having tripped over anything. Under the terms of her employment she slept and had her breakfast in the home but went out for lunch and dinner.

Upon these facts, which are not in dispute, we must determine whether her injuries were compensable under the Workmen's Compensation Law and decision turns upon whether they arose " out of and in the course of " her employment as a domestic servant living in her master's home. The facts being undisputed this is a question of law. (*Dennis* v. *A. J. White and Company* [1917] A. C. 479 [House of Lords].)

It being part of her employment to sleep and to live in the household, it was in the natural course of her employment to arise and dress in order to commence her daily work. We have held that a cook employed in a hotel at a weekly wage with room and board was entitled to compensation for injuries suffered in a fall on the way from her bedroom to the bathroom early in the morning before she had commenced her work (*Matter of Underhill* v. *Keener,* 258 N. Y. 543); but a laundress employed upon similar terms in a hotel, who also enjoyed the

privilege of using her employer's laundry after hours to do her own laundry work, was denied compensation for accidental injuries suffered while doing such work after hours (*Matter of Daly* v. *Bates & Roberts,* 224 N. Y. 126); and in *Matter of Hall* v. *City of New York* (282 N. Y. 708), a nurse employed in a city-owned hospital, who was injured by falling in a tub in which she was bathing, was denied compensation. In the *Daly* case (*supra*), we held that the claimant's employment did not require her presence in the laundry at the time she was injured and that the activities out of which her injuries arose were neither part of nor incidental to her employment. Examination of the record in that case discloses that the laundress received her injuries while she was employed by Bates & Roberts, proprietors of the Murray Hill Hotel, who were engaged in the operation of a power laundry in connection with such hotel, where she was employed to work during fixed hours of each day. It was customary for the employees in the laundry to do their own washing there in the evening and it was while she was engaged in doing her personal laundry after hours that the claimant sustained her injuries. The employment in that case obviously had little in common with domestic service in a private household.

In the *Hall* case (*supra*), it appeared that the nurse was " not in service " on the day when she fell in the tub while taking a bath. For these reasons it could not be said in the *Daly* case or in the *Hall* case that the injuries arose out of or in the course of the employment. That was not the situation in *Matter of Giliotti* v. *Hoffman Catering Co.* (246 N. Y. 279), nor in *Matter of Underhill* v. *Keener* (*supra*), which was decided upon the authority of the *Giliotti* case. In the *Giliotti* case the decedent was employed as a chef at a weekly wage with room and board. We said that his status was practically that of a domestic servant and that his sleeping on the premises in a room provided by his employer was an incident of his employment mutually beneficial to employer and employee and not a temporary suspension of it. A fire occurred on the premises and the chef was suffocated in his sleep. His accidental death was held to be compensable. It is true he was not injured because he was engaged in some purely personal act, like taking a bath or doing his washing or changing his clothes, as was the claimant in this case, and we are urged to deny compensation because the acci-

dent here happened while claimant was dressing in the privacy of her own room.

Nothing could have been more personal than the call of nature in the *Underhill* case (*supra*), and yet that case was decided on the authority of the *Giliotti* case, where compensation was awarded. The statements in the *Giliotti* opinion, to the effect that the claimant was not injured while taking a bath or doing his washing or changing his clothes, are not rulings that injuries occurring at such times are not compensable, although such rulings were made in *Matter of Davidson* v. *Pansy Waist Co.*, 240 N. Y. 584, and *Matter of Daly* v. *Bates & Roberts* (*supra*).

No doubt the personal quality of the act causing injury may be important, and in many cases decisive, in determining that the injury did not arise out of and in the course of employment, for in almost every employment purely personal acts have no connection with the employment. This was the situation in the *Davidson* case (*supra*), involving the employment of a traveling salesman who was injured by falling in a hotel bathroom. But in domestic service, where the servant lives in and is a part of the household, there are many activities incidental to the employment of a purely personal and private character, such as eating and sleeping and living under the master's roof. Accidents in such employment are domestic. They happen anywhere in the house, not by reason of exposure to risks peculiarly inherent in the employment, but because of the ordinary risks of accidental injury which may happen to any of us at any time. Consequently, unusual accidents and uncommon injuries are rarely connected with such employment. There is nothing unusual in falling in a bathtub. Anyone who bathes may do that and many do. Nor is any added risk of tripping or slipping in one's room or out of it incurred by going into domestic service; but these are the risks connected with such service and if the servant lives and sleeps in the home of the master, accidental injuries incurred within the home, except under extraordinary circumstances involving injuries unconnected with any of the incidents of domestic service, may fairly be said to arise out of and in the course of such employment, whether the servant is engaged in getting dressed or in any other personal activity which is necessary to the performance of her duties.

We are not unmindful that there are statements in cases involving other employments which if applicable to domestic service would require denial of compensation in this case. See *Matter of Davidson* v. *Pansy Waist Co.* (*supra*), involving the employment of a traveling salesman; *Matter of Pisko* v. *Mintz* (262 N. Y. 176), where a janitor apparently set fire to his own bed. See, also, *Matter of Commissioner of Taxation & Finance* v. *Brookshire Construction Co.* (275 N. Y. 578) and *Matter of Commissioner of Taxation & Finance* v. *Fure* (264 N. Y. 678), where the employment of watchmen was involved and it must be said that the language of the opinions in the *Davidson* and *Pisko* cases does not distinguish between domestic service and the employments there involved. Indeed illustrations of injuries stated to be noncompensable refer in terms to domestic servants. In none of these cases, however, was compensation denied to a domestic servant, and *Matter of Underhill* v. *Keener* (*supra*), must still be regarded as a controlling precedent. Accordingly, we reject any statements in decisions dealing with other employments which may conflict with our decision here that the claimant's injuries are compensable notwithstanding the fact that she was injured by a fall while putting on her clothes in the privacy of her own room, on the ground that such statements can have no application to domestic employment where the accident arose as it did in this case. The reason for this distinction is well stated in a California case (*Employers' etc. Corp.* v. *Indus. Acc. Com.*, 37 Cal. App. 2d, 567) where a claimant, employed as a cook in the private residence of her employer, was injured in her own room while engaged in shortening a street dress and standing on a stool the more clearly to observe the hem of the dress in a mirror on the wall. She fell from the stool and the resulting injuries were held to have arisen out of and in the course of her employment as a domestic servant. The court said (at p. 574): " A household servant is in a different category from most other employees. Normally she does not work, and this particular employee did not work, during definite hours. She is always on call. The employment requires her to live on the premises. She must be neat in dress and general appearance. It is necessarily contemplated by the employ-

ment that she must perform personal acts such as she was here performing while she is in her room on call. The same rule cannot be applied to such an employee that would be applied to an employee such as a stenographer who works set hours and whose employment would not necessarily contemplate sewing or other adjustment of clothes during working hours. In the case of domestic servants it is normally one of the implied terms of the employment that the employee may, and shall, perform such tasks. They are incidental to, and arise out of, the very nature of the particular employment." The same distinction was recognized in *Matter of Giliotti* v. *Hoffman Catering Co.* (246 N. Y. 279, *supra*); *Davidson & Co.* v. *M'Robb* ([1918] A. C. 304 [House of Lords], see Lord DUNEDIN's judgment, p. 321); and *Codling* v. *Ridley* (26 B. W. C. C. 3 [1933, Court of Appeal]).

Speaking generally, Lord Chancellor FINLAY in *Dennis* v. *A. J. White and Company* ([1917] A. C. 479 [House of Lords]), quoting Lord PARMOOR in *Thom* v. *Sinclair* ([1917] A. C. 127 [House of Lords]), said (at p. 482): " The fact that the risk may be common to all mankind does not disentitle a workman to compensation if in the particular case it arises out of the employment."

The order should be affirmed, with costs.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY and DESMOND, JJ., concur; LEWIS, J., taking no part.

Order affirmed.