In the Matter of the Claim of WILLIAM R. ABBOTT, Respondent, *v.* BEDFORD PRODUCTS DIVISION et al., Appellants. WORKMEN'S COMPENSATION BOARD, Respondent.

Third Department, December 5, 1961.

*William F. Hanson* for appellants.

*Jacowitz & Bardach* for claimant-respondent.

*Louis J. Lefkowitz, Attorney-General (John J. Reilly* and *Roy Wiedersum* of counsel), for Workmen's Compensation Board, respondent.

TAYLOR, J. An employer and its carrier appeal from a decision and award of the Workmen's Compensation Board based on a finding that claimant's disability was causally related to his employment.

Claimant, aged 57, was a trailer-truck driver. On August 13, 1957 he left Dunkirk, New York at 6:00 P.M. with a consignment of 2,400 cartons of concentrated grape juice and drove approximately 400 miles to North Abington, Massachusetts, arriving there at approximately 3:00 A.M. on the following morning. He slept in the cab of the truck until the plant of the consignee opened at 7:00 A.M. when, with the assistance of a helper furnished by the latter, claimant commenced the unloading of his employer's trailer. Each of the cartons weighed 13 pounds and they were piled in the vehicle to a height of about four feet. In the unloading process claimant removed two cartons at a time and placed them on a roller conveyor which was extended into the vehicle as the work progressed.

Within the period of one hour immediately before he was stricken, claimant estimated that he alone had handled 900 cartons or about five and three-fourths tons of merchandise, an occupational activity which had required him to lift 26 pounds 450 times during a span of about 60 minutes. His testimony was that he then became "weak and broke out in a sweat", felt "tightness and pain across [his] chest and down [his] left shoulder", thereupon discontinued his work, sat for a while on the adjacent loading platform and feeling "cold" entered the bunk of the truck from which, shortly thereafter, he was removed to a hospital where his condition was diagnosed as coronary thrombosis and acute posterior myocardial infarction, the latter concededly demonstrated by electrocardiographic evidence. Although claimant stated that he had not previously experienced such symptoms and to his knowledge had had no prior heart trouble, the medical evidence is in agreement that

at the time of his attack he was suffering from coronary arteriosclerosis.

Upon a finding that the medical evidence established "that the arduous and heavy work of unloading the truck precipitated the myocardial infarction and caused the disability", the board, one member dissenting, reversed the decision of the Referee who had disallowed the claim. Its decision also noted as a contributing force to the strain of claimant's heart his 400-mile trip which had ended but a few hours before the unloading activity began.

Appellants urge that claimant's work did not involve unusual physical strain and that the expert medical testimony upon which he relied did not causally relate the heart attack to his employment.

Doctor Berk, who examined claimant on July 22, 1958, reported that "there would appear to be no question, but that there was causal relation between the occupation of the claimant and his subsequent myocardial infarction and present disability. This is based upon the fact that this previously well man was actively engaged in arduous work, when in the midst of this work, he suddenly developed the acute symptoms of what proved to be an acute myocardial infarction. It is my opinion that this occurred either through a long episode of coronary insufficiency with resultant myocardial infarction or possibly through the precipitation of a coronary thrombosis by his arduous activity and increased coronary blood pressure during this activity" and later testified, in behalf of claimant, that in his opinion the work "was a contributing cause to his developing his acute episode at that time." The witness further elucidated his medical theory of causal relationship in the course of both his cross- and redirect examinations—in general to the effect that claimant's underlying coronary artery disease had progressed to the point where his usual arduous work had become excessive with precipitative consequences on the day of the event. The board could regard the testimony of this witness as the expression of a medical opinion of causality and his answers to questions propounded on cross-examination as not inconsistent with his medical theme that claimant's normally strenuous work when imposed on his naturally progressive underlying arteriosclerotic condition contributed to his heart attack. (*Matter of Zaepfel* v. *du Pont de Nemours & Co.*, 284 App. Div. 693, 696, affd. 309 N. Y. 962.)

Based on an examination conducted in appellants' behalf about eight months after the attack, Doctor Sagall reported and testified that in his opinion claimant's work did not precipitate

34

the coronary attack which he stated " resulted from the natural progression of pre-existent vascular disease and was not induced or hastened in its appearance by the work which he was doing that morning ". His conclusion was founded, in pertinent part, on the hypothesis that " at the time that he became acutely ill this man was not performing or engaged in unusual or extremely heavy physical exertion." He testified on cross-examination that he would assume that the hour-long labor of claimant " did increase the work of his heart." The probative value of a professional medical opinion premised on an inapposite postulate was the proper subject of evidentiary assessment by the board.

Whether claimant's coronary attack resulted from the natural progression of pre-existing vascular disease or was brought on or hastened by overexertion or strain normally incident to the ordinary course of his arduous employment was a factual question for determination by the board. Viewed in the light of the record as a whole, substantial evidence supports the rationale of its decision. (*Matter of Masse* v. *Robinson Co.,* 301 N. Y. 34; *Matter of Schechter* v. *State Ins. Fund,* 6 N Y 2d 506; *Matter of Kehoe* v. *London Guar. & Acc. Ins. Co.,* 278 App. Div. 731, affd. 303 N. Y. 973; *Matter of Gibalski* v. *Elmira Country Club,* 8 A D 2d 883; *Matter of Wasserman* v. *Covington Fabrics Corp.,* 9 A D 2d 554.)

The decision of the Workmen's Compensation Board should be affirmed, with costs.

BERGAN, P. J., GIBSON, HERLIHY and REYNOLDS, JJ., concur.

Decision of the Workmen's Compensation Board affirmed, with costs.